IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:11-cv-1637-Orl-31DAB

AJIT BHOGAITA

    Plaintiff,

v.

ALTAMONTE HEIGHTS CONDOMINIUM ASSN., INC.

    Defendant.
_____/

## COMPLAINT
## (JURY TRIAL DEMANDED)

COMES NOW, Plaintiff, AJIT BHOGAITA, by and through their undersigned counsel, sues the Defendant, ALTAMONTE HEIGHTS CONDOMINIUM ASSN., INC. and states as follows:

### JURISDICITONAL ALLEGATIONS

1.     The Court has original jurisdiction pursuant to 11 U.S.C. §1331, 42 U.S.C. § 3613, because this lawsuit is brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq. and supplemental jurisdiction under 28 U.S.C. § 1291, over Plaintiffs claims under the Florida Fair Housing Act, § 760.20, et seq.

2.     Venue is proper in the Middle District of Florida, Orlando Division, under 28 U.S.C. § 1391(b) because the claim arose in this judicial district.

3.     Plaintiffs AJIT BHOGAITA is a resident of the State of Florida, is otherwise sui juris. BHOGAITA currently owns and lives at 312C Cherokee Court, Altamonte Springs, FL.

4. Defendant ALTAMONTE HEIGHTS CONDOMINIUM ASSN., INC. (hereinafter "ALTAMONTE HEIGHTS") is a Florida non-profit corporation, licensed to and doing business in Broward County, Florida, and operates a condominium building of 118 units, located at 300 Cherokee Court, Altamonte Springs, FL.

## GENERAL ALLEGATIONS

5. AJIT BHOGAITA is a veteran of the United States Air Force who suffers from Post Traumatic Stress Disorder as a result of Military Sexual Trauma. As a result of his PTSD, BHOGAITA suffers from chronic anxiety and depressive disorders.

6. In order to assist with his psychological disability, it is necessary for BHOGAITA to have his dog, KANE, to have equal use and enjoyment of his home.

7. On May 4, 2010, ALTAMONTE HEIGHTS sent BHOGAITA a notice of violation for keeping a dog in excess of the twenty-five pound weight limit. ALTAMONTE HEIGHTS demanded that BHOGAITA remove his pet by May 18, 2010 or further action would be taken.

8. BHOGAITA provided ALTAMONTE HEIGHTS with a note from his treating medical professional Shih-Tzug Li, M.D., dated May 7, 2010, which verified that BHOGAITA is disabled, and "(d)ue to mental illness, (BHOGAITA) has certain limitations regarding social interaction and coping with stress and anxiety. In order to help alleviate these difficulties, and to enhance his ability to live independently and to fully use and enjoy the dwelling unit, I am prescribing an emotional support animal that will assist (BHOGAITA) in coping with his disability."

9. BHOGAITA also provided ALTAMONTE HEIGHTS with a note from Dr. Li, dated May 12, 2010, which additionally stated, "I am prescribing an emotional

support animal that will assist (BHOGAITA) in coping with his disability, specifically his dog, Kane. (BHOGAITA) has therapeutic relationship with this specific dog, Kane. As an emotional support animal, Kane serves to ameliorate otherwise difficult to manage day to day psychiatric symptoms in (BHOGAITA)."

10. On July 13, 2010, ALTAMONTE HEIGHTS requested the following additional information so that it could determine whether it was required to provide BHOGAITA an accommodation:

> (1) the exact nature of his impairment and how it substantially limits his major life activities;
>
> (2) how long BHOGAITA had been receiving treatment for his impairment;
>
> (3) how many sessions BHOGAITA had had with Dr. Li;
>
> (4) the specific training his dog had received; and
>
> (5) why BHOGAITA required a dog over twenty-five pounds to have an equal opportunity to use and enjoy his dwelling.

10. BHOGAITA then provided ALTAMONTE HEIGHTS with a note from Dr. Li, dated July 27, 2010, which stated, BHOGAITA "has certain limitations regarding social interaction and coping with stress and anxiety. This limits his ability to work directly with other people, a major life activity...He is able to work with the assistance of his emotional support animal. Otherwise his social interactions would be so overwhelming that he would be unable to perform work of any kind."

11. On August 17, 2010, ALTAMONTE HEIGHTS made another request to BHOGAITA for the following additional information in order to make a determination:

 (1) a list a each individual disability for which BHOGAITA requires the assistance of his pet;

 (2) documentation from a medical professional that clearly supports that BHOGAITA has those disabilities and that he is in need of a trained support animal that exceeds the twenty-five pound weight limit for that disability;

 (3) the number of sessions BHOGAITA has had with medical professionals other than Dr. Li; and

 (4) information related to professional training BHOGAITA's dog successfully completed regarding the assistance he provides to BHOGAITA.

12. On October 18, 2010, ALTAMONTE HEIGHTS's attorney sent BHOGAITA a third request for additional information. ALTAMONTE HEIGHTS requested a sworn statement from Dr. Li containing:

 (a) the exact nature of BHOGAITA's alleged mental disability;

 (b) BHOGAITA's treatment, including a list of all medications and the number of counseling sessions per week;

 (c) details of how the diagnosis was made;

 (d) the total number of hours and sessions of mental health treatment BHOGAITA has received;

 (e) how long BHOGAITA has been a patient of the psychiatrist and how long he's been treated for mental disability;

 (f) whether the condition is permanent or temporary;

 (g) details of the prescribed treatment moving forward;

(h) description of how the mental disability substantially limits BHOGAITA's major life activities;

(i) details of why a smaller dog would not sufficiently provide BHOGAITA an equal opportunity to enjoy his unit; and

(j) documentation of the individualized training BHOGAITA's dog received for the purpose of helping him with his mental disability, including dates, contact information of the instructor, and copies of any certifications received.

13. ALTAMONTE HEIGHTS demanded this information by November 18, 2010. If BHOGAITA chose not to provide the requested information, ALTAMONTE HEIGHTS stated he had until December 20, 2010 to remove the dog from his unit or it would file for arbitration.

14. ALTAMONTE HEIGHTS's further questions and requests for detailed information were unreasonable and reached beyond what ALTAMONTE HEIGHTS needed to know in order to make a determination in the matter.

15. ALTAMONTE HEIGHTS's continued refusal to grant BHOGAITA's accommodation request after having received sufficient information and documentation to support it amounts to an unreasonable delay and effective denial of BHOGAITA's request.

16. Further, as a direct and proximate result of Defendants' refusal to accommodate BHOGAITA and continued inquiry in to his mental illness, BHOGAITA has suffer irreparable loss and injury including, exacerbation of his existing psychological disability and suicidal idealization. As a result, he has also suffered loss of wages,

requires further psychological treatment in the future and feels at danger in his own home.

17. Plaintiffs have retained the undersigned to represent them in this cause and have agreed to pay them a reasonable fee for their services.

18. On December 1, 2010, BHOGAITA filed a complaint with the United States Department of Housing and Urban Development and the Florida Commission on Human Relations relating to this matter. On January 21, 2011, the Florida Commission on Human Relations and HUD issued a finding of Cause against ALTAMONTE HEIGHTS.

19. Plaintiff has complied with all necessary conditions precedent to the bringing of this action, or such conditions precedent has been waived.

## COUNT I –FAILURE TO REASONABLY ACCOMMODATE
### (42 U.S.C. § 3604(f)(3)(B); §760.23(9)(b))

20. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 19 above as though fully set forth herein.

21. ALTAMONTE HEIGHTS had actual knowledge of BHOGAITA's disability or regard him as a person with a disability.

22. BHOGAITA's emotional support animal was necessary for his equal use and enjoyment of occupying a home.

23. BHOGAITA had requested a reasonable accommodation of the no pets over 25 lbs. rule so BHOGAITA could have and use her emotional support animal.

Case 6:11-cv-01637-GAP-DAB   Document 1   Filed 10/11/11   Page 7 of 9 PageID 7

BHOGAITA v. ALTAMONTE HEIGHTS
Page 7 of 9

24. ALTAMONTE HEIGHTS delayed such decision, and such undue delay constitutes a denial.

25. Defendant's failure to modify its policies to accommodate the disabilities of the Plaintiff is discriminatory and unlawful.

26. Such actions by Defendant were in total and reckless disregard of Plaintiffs' rights and indifferent to the medical conditions or needs of Plaintiff.

27. Further, as a direct and proximate result of Defendants' refusal to accommodate BHOGAITA and continued inquiry in to his mental illness, BHOGAITA has suffer irreparable loss and injury including, exacerbation of his existing psychological disability, suicidal idealization, and deprivation of his right to equal housing opportunities regardless of disability. As a result, he has also suffered loss of wages, requires further psychological treatment in the future and feels at danger in his own home.

WHEREFORE, Plaintiff, Plaintiff s AJIT BHOGAITA, demands judgment against the ALTAMONTE HEIGHTS CONDOMINIUM ASSN., INC., to declare that the actions of the Defendants violated the Fair Housing Amendments Act, and the Florida Fair Housing Act by discriminating against persons with disabilities; enjoining them to permit the rental of a unit when available without preconditions on the emotional support dog, and award Plaintiffs compensatory and punitive damages, and his attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

### COUNT II– DISCRIMINATION IN THE TERMS, CONDITIONS, OR PRIVILEGES OF THE PROVISION OF SERVICES OR FACILITIES IN CONNECTION WITH A DWELLING
(42 U.S.C. § 3604(f)(2); §760.23(8))

28. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 19 above as though fully set forth herein.

29. It is unlawful to make an inquiry as to the nature or severity of a handicap of a person with a disability beyond which was necessary to afford BHOGAITA an accommodation at his home.

30. Such requests were solely made for the intrusive and prurient interests of the agents and employees of ALTAMONTE HEIGHTS.

31. Such actions by Defendant were in total and reckless disregard of Plaintiff's rights and indifferent to the psychological conditions or needs of BHOGAITA.

32. As a result of ALTAMONTE HEIGHTS unreasonable inquiries, BHOGAITA was subject to discrimination in the terms and conditions of the services and facilities of his condominium, by limiting the full and equal enjoyment of the condominium grounds.

33. Further, as a direct and proximate result of Defendants' refusal to accommodate BHOGAITA and continued inquiry in to his mental illness, BHOGAITA has suffer irreparable loss and injury including, exacerbation of his existing psychological disability, suicidal idealization, and deprivation of his right to equal housing opportunities regardless of disability. As a result, he has also suffered loss of wages,

requires further psychological treatment in the future and feels at danger in his own home.

**WHEREFORE**, Plaintiff, Plaintiff s AJIT BHOGAITA, demands judgment against the ALTAMONTE HEIGHTS CONDOMINIUM ASSN., INC., to declare that the actions of the Defendants violated the Fair Housing Amendments Act, and the Florida Fair Housing Act by discriminating against persons with disabilities; enjoining them to permit the rental of a unit when available without preconditions on the emotional support dog, and award Plaintiffs compensatory and punitive damages, and his attorneys' fees and costs as well as any other such relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial for all issues so triable.

Dated this _5th_ day of October, 2011.

> LAW OFFICES OF MATTHEW W. DIETZ, P.L.
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> Phone (305) 669-2822
> Facsimile (305) 442-4181
> E-Mail: Matthewdietz@usdisabilitylaw.com
>
> Aaron Bates, Esq.
> The Maher Law Firm, PA
> 631 W. Morse Blvd., Suite 200
> Winter Park, Florida 32789
> Phone: (407) 839-0866
> Facsimile: (407) 425-7958
> E-Mail: acbates@maherlawfirm.com
> Florida Bar No.: 011749
>
> BY: _____
> MATTHEW W. DIETZ, ESQUIRE
> FL. BAR NO.: 0084905