IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AJIT BHOGAITA,

    Plaintiff,

v.                                     **CASE NO.:**   6:11-CV-1637-ORL-31-DAB

ALTAMONTE HEIGHTS         **DISPOSITIVE MOTION**
CONDOMINIUM ASSN., INC.

    Defendant.

_____

**PLAINTIFF AJIT BHOGAITA'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Ajit Bhogaita (hereinafter "Bhogaita" or "Plaintiff"), by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 56 hereby moves for summary judgment against Defendant Altamonte Heights Condominium Association, Inc. (hereinafter "Altamonte Heights" or "Defendant").

**INTRODUCTION**

The instant case arises out of Bhogaita's contention that Defendant violated the disability provisions of the Federal and Florida Fair Housing Acts, 42 U.S.C. § 3604(f)(3)(b) and Fla. Stat. § 706.23(9)(b), by refusing to accommodate his need for an emotional support dog in his home for his Post Traumatic Stress Disorder ("PTSD"). As of the filing of the instant motion, every allegation of Bhogaita's Complaint has been proven with uncontroverted evidence.

1

As opposed to making a reasonable accommodation for Bhogaita, Defendant made repeated requests for details into Bhogaita's medical and psychological history as to why an emotional support animal was needed for his PTSD. Despite these redundant requests, Bhogaita provided no less than three (3) letters from his psychiatrist, Dr. Li, which addressed Defendant's queries. At this point, Defendant was required to respond to Bhogaita's request for an accommodation. Nevertheless, Defendant failed to respond, or even address, Bhogaita's request for an accommodation. Defendant's repeated requests for information were clearly intended to dissuade Bhogaita from maintaining his request for an accommodation for his support animal.

As such, by Defendant "persisting in its intrusive quest for more–and largely irrelevant– information, [Defendant] constructively denied Bhogaita's request." See Doc. 17 at pg. 7. Accordingly, for the reasons set forth herein, Bhogaita is entitled to judgment as a matter of law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Bhogaita is a veteran of the United States Air Force who suffers from PTSD as a result of military sexual trauma. Bhogaita Deposition, 14:17 – 15; 134:13-25 attached hereto as **Exhibit A**; July 27, 2010 Ltr. from Dr. Shih-Tzung Li attached hereto as **Exhibit B**.[1] As a result of his PTSD, Bhogaita suffers from chronic anxiety and depressive disorders. Id. at **Ex. B**; see also Declaration of Ajit Bohaita at ¶6 attached hereto as **Exhibit C.** During all times relevant herein, Bhogaita owned a condominium unit operated by Defendant. See **Ex. A** at 51:15 – 52:4; see also **Ex. C** at ¶2. Defendant maintained a policy that residents

---

[1] Exhibits B and F have been previously filed under seal. See D.E. 9 and D.E. 10.

of the condominiums could not keep animals that weighed over twenty-five (25) pounds. See Altamonte Heights Condominium Assoc., Inc. Rules and Regulations at pg. 2 attached hereto as **Exhibit D**.

On May 4, 2010, Defendant sent a notice to Bhogaita which demanded that he remove his pet dog, "Kane," because he exceeded the twenty-five pound weight limit. May 4, 2010 Ltr. from Altamonte Heights Condominium Assoc., Inc. attached hereto as **Exhibit E**. In response, Bhogaita provided a letter to Defendant from his treating medical professional, Dr. Shih-Tzung Li, which stated:

> [d]ue to mental illness, [Bhogaita] has certain limitations regarding social interaction and coping with stress and anxiety. In order to help alleviate these difficulties, and to enhance his ability to live independently and to fully use and enjoy the dwelling unit, I am prescribing an emotional support animal that will assist [Bhogaita] in coping with his disability.

May 12, 2010 Ltr. from Dr. Shih-Tzung Li; see also May 7, 2010 Ltr. from Dr. Shih-Tzung Li attached hereto as **Composite Exhibit F**.

Despite the letter from Dr. Li, on July 13, 2010, Defendant sent another request for detailed information concerning Bhogaita's disability and psychological history. See July 13, 2010 Ltr. from Altamonte Heights Condominium Assoc., Inc. attached hereto as **Exhibit G**. In response, on July 27, 2010, Dr. Li sent another letter which added:

> I am prescribing an emotional support animal that will assist [Bhogaita] in coping with his disability, specifically his dog, Kane. [Bhogaita] has therapeutic relationship with this specific dog, Kane. As an emotional support animal, Kane serves to ameliorate otherwise difficult to manage day to day psychiatric symptoms in [Bhogaita].

**Ex. B**. Dr. Li also offered to provide any further information concerning his prescription of an emotional support animal to Bhogaita. Id.

Notwithstanding the identification of a disability by a medical professional and the establishment of a prescription and need for the specific animal, "Kane," because of the therapeutic relationship with Bhogaita, on August 17, 2010, Defendant sent another request for detailed medical information, which requested, in pertinent part:

> 1. Please list each individual disability that you feel your pet is required for in order for you to offset the effects of those individual disabilities. Originally you claimed one disability, not you are claiming another disability. Please list all related disabilities.
>
> 2. Please provide documentation from a medical professional(s) that clearly supports that you have any of the disabilities noted above, disabilities that substantially limit a major life activity, and that you are in need of a trained "support animal" that exceeds the 25 pound weight limit for that disability.
> Please include contact physician information as well. (Note: You have already provided documentation regarding your claim related to mental health issues; however, your psychiatrist has not indicated that you need an oversized pet for this disability. This should be clarified by him if you want to exception for this particular condition considered.)
>
> 3. If you add names of any additional medical professional(s) from your original submission only of Dr. Li, please include how many sessions you have had with those additional physicians similar to the information you provided regarding your sessions with Dr. Li.
>
> 4. Please provide all information related to the professional training your pet has successfully completed regarding the assistance you claim he/she is required to offer you as a support animal. This requested information shall include the type of training the pet received specific to the disability, the dates of training, the location of training, names and contact name of the trainer(s), and copies of any certificates of successful completion.

August 17, 2010 Ltr. from Altamonte Heights Condominium Assoc., Inc. attached hereto as **Exhibit H**. On the same day, Bhogaita provided a written response to Defendant's inquiries. See Ltr. From Ajit Bhogaita attached hereto as **Exhibit I**.

Despite the multiple requests for information and timely responses by Bhogaita, on October 18, 2010, Defendant sent another request for more information from its attorney,

4

Patrick Willis, Esq. See November 3, 2010 Ltr. From Patrick Willis, Esq. attached hereto as **Exhibit J**. This request included:

    (a)    the exact nature of Bhogaita's alleged mental disability;

    (b)    Bhogaita's treatment, including a list of all medications and the number of counseling sessions per week;

    (c)    details of how the diagnosis was made;

    (d)    the total number of hours and sessions of mental health treatment Bhogaita has received;

    (e)    how long Bhogaita has been a patient of the psychiatrist and how long he's been treated for mental disability;

    (f)    whether the condition is permanent or temporary;

    (g)    details of the prescribed treatment moving forward;

    (h)    description of how the mental disability substantially limits Bhogaita's major life activities;

    (i)    details of why a smaller dog would not sufficiently provide Bhogaita an equal opportunity to enjoy his unit; and

    (j)    documentation of the individualized training Bhogaita's dog received for the purpose of helping him with his mental disability, including dates, contact information of the instructor, and copies of any certifications received.

Id. Defendant never granted or denied Bhogaita's request for an accommodation.

On December 1, 2010, seven (7) months after the first request and in response to the numerous requests for additional information and threats of expulsion of "Kane", Bhogaita filed a complaint with the United States Department of Housing and Urban Development ("HUD") and the Florida Commission on Human Relations ("FCHR") relating to this matter. See Complaint filed with HUD and the FCHR attached hereto as **Composite Exhibit K**. On January 21, 2011, the FCHR and HUD issued a finding of

5

Cause against Defendant. See Finding of Cause by HUD and the FCHR attached hereto as **Composite Exhibit L**.[2]

## MEMORANDUM OF LAW

A. Standard of Review.

Summary judgment is proper if there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 provides the standard for Summary Judgment and states, in pertinent part, that: "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(c). The evidence must be construed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The nonmoving party must also provide more than a mere "scintilla" of evidence to avoid summary judgment. Id. at 252. A party moving for summary judgment therefore discharges its burden to defeat the claims against it by showing an absence of evidence to support the non-moving party's case. Comer v. Palm Bay, 171 F. Supp. 2d 1307 (M.D. Fla. 2000). As such, even when the facts are looked at in the light most favorable to the Defendant, Bhogaita in entitled to judgment as a matter of law.

---

[2] Factual findings, including opinions and conclusions, of an agency investigation are admissible. Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1310 – 12 (5th Cir. 1991); see also Marable v. H.Walker & Associates, 644 F.2d 390, 394 (5th Cir. 1981); Kormoczy v. HUD, 53 F. 3d 821, 823 – 24 (7th Cir. 1995); and Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1450 (4th Cir. 1990).

B. Bhogaita is entitled to judgment as a matter of law as to his claims under 42 U.S.C § 3604(f)(3)(B) and Fla. Stat. § 760.23(9)(b).[3]

To prevail on a claim under 42 U.S.C § 3604(f)(3)(B) and Fla. Stat. § 760.23(9)(b), Bhogaita must establish that (1) he is disabled within the meaning of the FHA; (2) he requested a reasonable accommodation; (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling; and (4) Defendant refused to make the requested accommodation. Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, 347 Fed. Appx. 464, 467 (11th Cir. 2009).

To establish a cause of action under this section of the FHA, a defendant must refuse to make a requested accommodation. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir. 2008). The denial of an accommodation can be actual or constructive, "as an indeterminate delay has the same effect as an outright denial." United States v. Hialeah Housing Authority, 418 Fed. App'x 872, 878 (11th Cir. 2011); see also Solodar v. Old Port Cove Lake Point Tower Condo. Ass'n, 2012 U.S. Dist. LEXIS 61680, *23 (S.D. Fla. May 2, 2012) (citing Overlook Mutual Homes, Inc. v. Spencer, 415 F. App'x 617, 622 (6th Cir. 2011) ("a housing provider that refuses to make a decision unless a requestor provides unreasonably excessive information" could be found to have "constructively denied the request [for an accommodation] by 'stonewalling' and short-circuiting the process").

This does not mean, however, that a defendant must accommodate all requests without question; rather, "[d]efendants must instead have . . . the ability to conduct a meaningful review of the requested accommodation to determine if such an

---

[3] "The Florida Fair Housing Act contains statutory provisions that are substantively identical to the federal Fair Housing Act." Loren v. Sasser, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002).

7

accommodation is required by law." Doc. 17 at pp. 6 – 7 (citing Schwarz, 544 F.3d at 1219 (citations omitted)). Upon request for an accommodation by a person with a disability, or a person associated with a person with a disability, it would be reasonable for a housing provider to "require the opinion of a physician who is knowledgeable about the subject disability and the manner in which a service dog can ameliorate the effects of the disability." Id. at pg. 7.

Moreover, the Department of Justice ("DOJ") has provided guidance as to what types of information a housing provider may request in order to determine if an accommodation is reasonable under the FHA:

**18. If a disability is not obvious, what kinds of information may a housing provider request from the person with a disability in support of a requested accommodation?**

A housing provider may not ordinarily inquire as to the nature and severity of an individual's disability (see Answer 16, above). However, in response to a request for a reasonable accommodation, a housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability (i.e., has a physical or mental impairment that substantially limits one or more major life activities), (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation. Depending on the individual's circumstances, information verifying that the person meets the Act's definition of disability can usually be provided by the individual himself or herself (e.g., proof that an individual under 65 years of age receives Supplemental Security Income or Social Security Disability Insurance benefits or a credible statement by the individual). A doctor or other medical professional, a peer support group, a non-medical service agency, or a reliable third party who is in a position to know about the individual's disability may also provide verification of a disability. In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for this inquiry.

Once a housing provider has established that a person meets the Act's definition of disability, the provider's request for documentation should seek only the information that is necessary to evaluate if the reasonable accommodation is needed because of a disability. Such information must

> be kept confidential and must not be shared with other persons unless they need the information to make or assess a decision to grant or deny a reasonable accommodation request or unless disclosure is required by law (e.g., a court-issued subpoena requiring disclosure).

Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Reasonable Accommodations under the Fair Housing Act (2004), found at http://www.justice.gov/crt/about/hce/joint_statement_ra.pdf.[4]

Both Hawn and the enforcing authorities' guidance require that the documentation requested by a provider be *limited* to determine whether the accommodation is needed because of a disability. Upon receipt of the first prescription by the Veterans' Administration ("VA"), any inquiry by Defendant should have ceased and the accommodation should have been granted because it was a reasonable request. However, Bhogaita provided additional information – a second prescription from the VA. This, however, was still not sufficient for Defendant and additional information was again requested. The inquiry by Defendant goes way beyond a meaningful review as contemplated by the Hawn court. In the case *sub judice*, reasonable documentation was provided and Defendant had more than enough information to conduct a meaningful review of the disability and the necessity of a service animal and make a decision.

Moreover, Defendant effectively denied Bhogaita's request for an accommodation and did not want to waive its prohibition for pets that weigh over 25 pounds. However, once the animal qualifies as a support animal under the Fair Housing Act, it is no longer a pet, and there is no additional barrier of additional qualifications,

---

[4] This document is a policy statement, not an authoritative interpretation of 42 U.S.C. § 3604. See Christensen v. Harris Cnty. 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed. 2d 621 (2000) "[I]nterpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law[,] do not warrant Chevron-style deference."). It may of course, have the "power to persuade." See id.

9

such as why does the animal need to be over 25 pounds. Dr. Li stated that there was a therapeutic relationship between Kane and Bhogaita, which should have been sufficient. See **Composite Ex. F**. In this matter, Defendant requested information which went far beyond what was necessary to determine whether Bhogaita had a disability and whether the animal was needed for his disability. Instead, they delved deep into his treatment history, treatment prognosis, medications taken, and even asked questions that were not necessary, such as the training for Kane to be an emotional support dog. There are no training requirements for emotional support dogs. See Overlook Mut. Homes, Inc. v. Spencer, 666 F. Supp. 2d 850, 857-861 (S.D. Ohio 2009); see also, Ligatti, No Training Required: The Availability of Emotional Support Animals as a Component of Equal Access for the Psychiatrically Disabled under the Fair Housing Act, 35 T. Marshall L. Rev. 139, 154-155 (Spring 2010)

Further, it is similarly questionable whether Defendant had any need to do further inquiry after Dr. Li prescribed the dog and established its need. The VA is congressionally authorized to prescribe service animals for persons with PTSD. See 38 U.S.C. § 1714(c)(3). In light of the 190,000 veterans returning from Iraq and Afghanistan suffering from PTSD, Congress has recently taken further efforts to expand the use of support animals to assist these men and women. See Veterans Sexual Assault Prevention and Health Care Enhancement Act, H.R. 2074, Veterans Dog Training Therapy Act, H.R. 198,[5] and the K-9 Companion Corps Act of 2011.[6] As such, the only

---

[5] http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=112_cong_bills&docid=f:h198ih.txt.pdf

[6] http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=112_cong_bills&docid=f:h943ih.txt.pdf

need that Defendant had in conducting further unnecessary inquiry was to force Bhogaita to move or evict his dog, or to satisfy Defendant's prurient curiosity.

Further, the failure to permit "Kane" after the first few letters from Dr. Li established a constructive denial. The Eleventh Circuit has found that a denial of reasonable accommodation "can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial." Hialeah Hous. Auth., 418 Fed. Appx. At 878 (11th Cir. 2011) (citation omitted).[7] In the Joint Statement of the Department of Housing and Urban Development and the Department of Justice: Reasonable Accommodations under the Fair Housing Act (2004), provides that

> A [housing] provider has an obligation to provide prompt responses to reasonable accommodation requests. An undue delay in responding to a reasonable accommodation request may be deemed to be a failure to provide a reasonable accommodation.

Joint Statement, supra at 11 (Question 15). The demand that Bhogaita produce his entire medical history in exchange for consideration for the possibility of granting his accommodation request is illegal.

There is no dispute that Bhogaita is disabled by virtue of his PTSD. As a result of his disability, Bhogaita requested an accommodation in the form of a waiver of Defendant's 25-pound pet limit for his emotional support animal, "Kane." "Kane" was necessary to afford Bhogaita an equal opportunity to the use and enjoyment of his dwelling. In response to Bhogaita's request, Defendant effectively stonewalled Bhogaita,

---

[7] See also U.S. v. Dist. of Columbia, 538 F. Supp. 2d 211, 219 (D.D.C. 2008) (*quoting* Groome); U.S. v. Tanski, No. 1:04-CV-714, 2007 WL 1017020, at *10 (N.D.N.Y. Mar. 30, 2007) (failure to respond to requests for modification constitutes refusal to make reasonable accommodation); Secretary, U.S. Dep't of Hous. and Urban Dev. v. Ocean Sands, Inc., HUD ALJ 04-90-0231-1, 1993 WL 343530 (HUD ALJ Sept. 3, 1993), at *15 (holding that condominium association's repeated delays in responding to requests for reasonable modifications, over many months, "effectively denied . . . permission" for the requested changes).

making request after request for information far beyond what was necessary to determine whether an accommodation could be provided. Nevertheless, Bhogaita provided three letters from a licensed VA psychiatrist, Dr. Li, and a letter from himself, which directly responded to Defendant's overreaching questions. The letters indicated that Bhogaita suffered from PTSD and that he had a therapeutic relationship with his dog "Kane." On July 27, 2010, Dr. Li further indicated that without "Kane," Bhogaita would be unable to work at home and cope with stress and anxiety. He also offered to answer any further questions Defendant had regarding his prescription.

Accordingly, the undisputed facts reveal that Bhogaita was disabled, and that he requested a reasonable accommodation necessary to afford him the ability to use and enjoy his condominium. At that juncture, Defendant was required to respond to Plaintiff's request for an accommodation. By continuing in its continuing requests for more–and largely irrelevant– information, Defendant constructively denied Bhogaita's request and violated the FHA and Florida Fair Housing Act. As such, Bhogaita is entitled to judgment as a matter of law as to Count I of the Complaint.

C. <u>Bhogaita is entitled to injunctive relief pursuant to 42 U.S.C § 3613(c)(1)</u>.

The Fair Housing Act provides for the enforcement of the Act by private persons. 42 U.S.C. § 3613. The Act provides for actual and punitive relief and clearly states that an individual may seek injunctive relief:

> …may grant as relief, as the court deems appropriate any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the Defendant from engaging in such practice or ordering such affirmative action as may be appropriate…

42 U.S.C. § 3613(c)(1). The injunctive relief being requested in this order clearly falls within this provision, and the purpose for seeking this injunctive relief is to ensure that the discriminatory action of the Defendant does not occur again.

Courts should use their "broad equitable powers" so as "to make possible the fashioning of the most complete relief possible." Int'l Bhd. Of Teamsters v. United States, 431 U.S. 324, 364 (1977). Furthermore, the district court has broad and flexible power to shape an effective remedy for fair housing violations. See James v. Lucas Metro Housing Authority, 833 F. 2d 1203, 1207-08 (6th Cir 1987), United States v. City of Parma, Ohio, 661 F 2d 562, 567 (6th Cir 1981), United States v. Yonkers Board of Education, 837 F 2d 1181 (2 Cir 1987).

When a plaintiff proves a violation of the Fair Housing Act, a presumption of future violation, and harm, arises. Silver Sage v. City of Desert Hot Springs, 251 F. 3d 814, 826-827 (9th Cir. 2001). Once a violation of the law has been found, injunctive relief is appropriate unless the Defendant can demonstrate that "'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953) (Clayton Act) (quoting United States v. Aluminum Co. of America, 148 F.2d 416, 448 (2d Cir. 1945)); see also Weeks v. Chaboudy, 984 F.2d 185, 189-190 (6th Cir. 1983) (Section 1983).

Injunctive relief is proper in this case to prevent future violations of the Fair Housing Act. In discrimination cases, "the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Parkview Heights Corporation v.

City of Black Jack, 605 F.2d 1033, 1035-36 (7th Cir. 1979) (quoting Albemarle Paper v. Moody, 422 U.S. 405, 418-19 (1975)).

In his Complaint, Bhogaita seeks injunctive relief against the Defendant. In this case, the Defendants cannot show that there is a reasonable likelihood that their discriminatory conduct will not be repeated absent an injunction. As set forth hereinabove, he is entitled to the same. In particular, Bhogaita seeks injunctive relief which includes:

    a. prohibiting the Defendant from engaging in unlawful disability discrimination.

    b. requiring Defendant to provide a notice to all tenants for all buildings owned and/or controlled by the Defendants, their rights under the Fair Housing Act.

    c. requiring that Defendant and all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently owned, managed and/or controlled by Defendant, are trained as to the terms of the Fair Housing Act, and implementing regulations.

    d. requiring that the Defendant maintains for inspection by Plaintiffs and all other tenants at its offices, copies of the Fair Housing Act, Fair Housing Amendments Act, and the telephone number for the U.S. Department of Housing and Urban Development for complaints with regards to the Fair Housing Act.

D. <u>Bhogaita is entitled to compensatory and punitive damages pursuant to 42 U.S.C § 3613</u>.

42 U.S.C § 3613 states, in pertinent part, that "…if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages…". Bhogaita has requested compensatory and punitive damages in his Complaint and requests a trial on the same.

Respectfully submitted this 3rd day of October, 2012.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 3, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of electronic filing to: Robert Alden Swift, Esq. and Greg Ackerman, Esq., COLE, SCOTT & KISSANE, P.A., Altamonte Heights, Tower Place, Suite 750, 1900 Summit Tower Blvd., Orlando, Florida 32810.

> Law Offices of Matthew W. Dietz, P.L.
> 2990 Southwest 35th Avenue
> Miami, Florida 33133
> T: (305) 669-2822
> F: (305) 442-4181
> Email: MatthewDietz@USDisabilityLaw.com
>
> By: <u>s/ Matthew W. Dietz</u>
> MATTHEW W. DIETZ, ESQUIRE
> FL. BAR NO.: 0084905
>
> Aaron C. Bates, Esq.
> Florida Bar No.: 011749
> The Maher Law Firm, P.A.
> 631 W. Morse Blvd., Suite 200
> Winter Park, FL 32789
> Telephone: (407) 839-0866
> Facsimile: (407) 425-7958
> Email: acbates@maherlawfirm.com