# EXHIBIT L




## State of Florida
## Florida Commission on Human Relations

*An Equal Opportunity Employer • Affirmative Action Employer*

Rick Scott
Governor

2009 Apalachee Parkway • Suite 100 • Tallahassee, Florida 32301-4857
(850) 488-7082
Web Site http://fchr.state.fl.us

Dr. Donna Elam
Chair

Derick Daniel
Executive Director

91 7108 2133 3937 2398 6366

FCHR No.: 2011H0182
HUD No.: 04-11-0298-8

**AJIT BHOGAITA**
312C Cherokee Court
Altamonte Springs, FL 32701

COMPLAINANT

**ALTAMONTE HEIGHTS CONDO. ASS'N, INC.**
c/o Dennis Warren, Director
300 Cherokee Court
Altamonte Springs, FL 32701

RESPONDENT

### NOTICE OF DETERMINATION (CAUSE)

PLEASE TAKE NOTICE that the Florida Commission on Human Relations has completed its investigation of this complaint and finds that there is reasonable cause to believe that a discriminatory housing practice has occurred. You need to be aware of the following statutory provisions, remedies, and choices of forum:

1. The complainant may request the Attorney General bring a court action in the name of the state on their behalf to enforce the provisions of the Fair Housing Act. A blank Election of Rights Form for Housing Discrimination Complaints has been provided to the complainant along with this notice. The complainant may choose this option by marking box number one on the form and returning it to the Commission.

2. The complainant may request that the Commission petition for an administrative hearing in the name of the state on their behalf to enforce the provisions of the Fair Housing Act. A blank Election of Rights Form for Housing Discrimination Complaints has been provided to the complainant along with this notice. The complainant may choose this option by marking box number two on the form and returning it to the Commission.

3. The complainant may begin a civil action in court no later than 2 years after the alleged discriminatory housing practice occurred. If filing in federal court under federal law, the computation of this 2-year period *excludes* any time during which the matter is pending for administrative relief with respect to a

---

**COMMISSIONERS**

| Gilbert M. Singer, Vice Chair | Gayle Cannon | Joanna Cunningham | Elena Flom |
| Lizzette Romano | Watson Haynes | Michael Keller | Billy Whitefox Stall |
| Darcell Streeter | Patty Ball Thomas | | Mario Valle |

complaint or charge, based on the alleged discriminatory housing practice. However, this 2-year time period *includes* the time during which an action arising from a breach of a conciliation agreement is pending.

4.   It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise of any rights granted by the Florida Fair Housing Act. Retaliation against any person for making a complaint, testifying, assisting, or participating in an investigation or conciliation under Florida's Fair Housing Act is a discriminatory housing practice that is prohibited.

FOR THE FLORIDA COMMISSION ON HUMAN RELATIONS:

_____   DATED: January 21, 2011
Derick Daniel
Executive Director

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that a copy of the foregoing NOTICE OF DETERMINATION (CAUSE) was filed at Tallahassee, Florida and served upon the above-named addresses this 21st day of January, 2010, by U.S. Mail.

By: Denise Crawford/AM
Clerk of the Commission

DD/cmc

2

January 3, 2011

DETERMINATION

CASE NAME: Bhogaita, Ajit v. Altamonte Heights Condominium Assoc., Inc.

CASE NUMBER: 04-11-0298-8
FCHR NUMBER: 2011H0182

I.  JURISDICTION

   A complaint was filed with HUD on December 2, 2010, alleging that Complainant(s) was injured by a discriminatory act. It is alleged that Respondent(s) was responsible for: discriminatory terms, conditions, privileges, or services and facilities; and failure to make reasonable accommodation. It is alleged that Respondent(s)'s acts were based on handicap. The most recent act is alleged to have occurred on November 6, 2010. The property is located at: 312C Cherokee Court, Altamonte Springs, FL  32201. The property in question is not exempt under the applicable statutes. If proven, the allegation(s) would constitute a violation of Sections 804b or f and 804f3B of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

   Respondent(s) receive no federal funding.

II. COMPLAINANT ALLEGATIONS

   Complainant belongs to a class of persons whom the Act protects from unlawful discrimination because of his disability. Complainant alleged in June he was advised to remove his emotional support animal because it is over the weight limit. Complainant alleged he has provided Respondent with medical documentation and his emotional support animal is currently in training. Complainant alleged there are other residents in violation of the animal weight limit and other rules in the community. Complainant alleged he is constantly being asked to provide additional medical information. Complainant alleged he is constantly questioned by board members and the property manager concerning his disabilities. Complainant believes Respondent has failed to make a reasonable accommodation and has subjected him to discriminatory term, conditions, privileges or services and facilities, in violation of the Fair Housing Act.

III. RESPONDENT DEFENSES

   Respondent denies that they discriminated against Complainant. Respondent states that Complainant has an over-sized dog that is in excess of the twenty-five pound weight limit in the community. Respondent states that Complainant has claimed that the dog is an emotional support animal. Respondent states that they requested information and documentation from Complainant to help them validate his claims that the dog is a service animal that is necessary to provide actual needed services pursuant to accepted

-1-

legal standards. To date, Complainant has repeatedly failed to do so. Complainant has refused to answer the necessary questions and to provide Respondent with supporting documentation that would allow them to draw a conclusion in this matter. Respondent initially sent Complainant a violation letter about his dog on October 21, 2008. He was sent another such letter on May 4, 2010. Subsequently, Complainant submitted a letter from his treating doctor dated May 7, 2010, stating that due to limitations regarding social interaction and coping with stress and anxiety, Complainant was being prescribed an emotional support animal to assist him with his disability. Upon receipt, Respondent sought advice from an attorney and was advised to seek clarification from Complainant about the nature of his impairments, the training of the animal, his need for the animal, and details about his medical treatment. Complainant responded to this request for information by letter, which Respondent received on August 17, 2010. In the letter, Complainant claimed new and additional disability needs related to a claim of old knee injuries received while serving in the military. He changed his claim that he needed a large pet for emotional support and now claimed the pet was needed for the purpose of providing physical bracing when rising to a standing position. This did not match the purpose cited in his original doctor's note, and it created additional questions, which Respondent asked Complainant so that they could evaluate his request. Complainant never responded to that request. On October 18, 2010, Respondent sent Complainant a final letter requesting that he provide them with the information by November 18, 2010, so that a decision could be made. Complainant never responded to that letter either. Respondent consistently enforces these rules and regulations on all residents. Respondent denies Complainant's allegations.

IV. FINDINGS AND CONCLUSION

In order to conclude there is reasonable cause to believe that such discriminatory action occurred in violation of 804(f)(3)(B) of the Fair Housing Act, as amended, all the elements of the case must be met. First, the investigation of this case must show that Complainant possesses or demonstrates a physical or mental impairment that qualifies Complainant as a disabled (handicapped) person within the meaning of the Fair Housing Act, and therefore establishes that Complainant belongs to a class of persons whom the law protects from unlawful discrimination, and Respondent must have known or should have known that Complainant was a disabled person within the meaning of the Act. Second, Complainant must have specifically requested, either in writing or verbally, that Respondent make one or more reasonable accommodations in the rules, policies, practices, procedures, or services. Third, the requested accommodation must have been necessary to afford Complainant an equal opportunity to use and enjoy the premises, and Respondent must have known or should have known that the requested accommodation was necessary to Complainant. Finally, Respondent must have denied or unreasonably delayed Complainant's request for reasonable accommodation.

Regarding the elements of this case, the investigation revealed the following:

1. Does Complainant possess or demonstrate any physical or mental impairment that qualifies Complainant as a disabled (handicapped) person within the meaning of the Fair Housing Act, and therefore establishes that Complainant belongs to a class of persons whom the law protects from unlawful discrimination, and did Respondent know or should Respondent have known that Complainant was a disabled person within the meaning of the Act?

Yes. The Florida and Federal Fair Housing Act define disability with respect to a person as a physical or mental impairment that substantially limits one or more major life activities, or being regarded as having such an impairment. The investigation revealed that Respondent disputed that Complainant was disabled. However, Respondent admitted that they received letters from Complainant's doctor dated May 7, 2010, May 12, 2010, and July 27, 2010. A review of the letters indicates that Complainant's doctor stated clearly that Complainant, "meets the definition of disability under the...Fair Housing Act..." due to functional limitations imposed by his disability. In the letters, Complainant's doctor described Complainant's disability, which substantially limits his ability to work. The doctor stated that Complainant works from home. The doctor further stated that, "He is able to work with the assistance of his emotional support animal. Otherwise his social interactions would be so overwhelming that he would be unable to perform work of any kind." Respondent does not dispute that they were provided these letters by Complainant's doctor. Therefore, it can be concluded that Complainant is disabled within the meaning of the Fair Housing Act, and that Respondent had reason to know that Complainant was disabled.

2. Did Complainant specifically request, either in writing or verbally, that Respondent make one or more reasonable accommodations in the rules, policies, practices, procedures, or services?

Yes. The investigation revealed that Complainant resides in a community under Respondent's control. Rule B(2) of Respondent's rules and regulations prohibits pets that weigh in excess of 25 pounds. Respondent does not dispute that Complainant requested permission to keep his emotional support dog, which weighs approximately 80-90 pounds, as a reasonable accommodation to this rule. Therefore, it can be concluded that Complainant requested an accommodation.

3. Was the requested accommodation necessary to afford Complainant an equal opportunity to use and enjoy the premises, and did Respondent know or should Respondent have known that the accommodation was necessary?

Yes. As stated above, the investigation revealed that Complainant's doctor sent Respondent several letters which verified that Complainant is disabled within the meaning of the Fair Housing Act, described the substantial functional

limitations imposed upon Complainant by his disability, and
described the manner in which Complainant's dog, Kane, assists to
ameliorate those limitations. The doctor stated, "In order
to…enhance his [Complainant's] ability to live independently and
to fully use and enjoy the dwelling unit that you manage, I am
prescribing an emotional support animal that will assist Mr.
Bhogaita in coping with his disability, specifically the his dog,
Kane. Mr. Bhogaita has a therapeutic relationship with this
specific dog, Kane. As an emotional support animal, Kane serves
to ameliorate otherwise difficult to manage day to day
psychiatric symptoms in Mr. Bhogaita." The doctor also stated
that Complainant works from home. The doctor further stated
that, "He [Complainant] is able to work with the assistance of
his emotional support animal. Otherwise his social interactions
would be so overwhelming that he would be unable to perform work
of any kind." These letters make it clear that the accommodation
is necessary because Complainant would not be able to work
without this specific dog, Kane. Respondent does not dispute
that they were provided these letters by Complainant's doctor.
Therefore, it can be concluded that Complainant is disabled
within the meaning of the Fair Housing Act, that the
accommodation was necessary, and that Respondent had reason to
know that Complainant was disabled and that the accommodation was
necessary.

4. Did Respondent deny or unreasonably delay Complainant's
request for a reasonable accommodation?

Yes. The investigation revealed that Respondent initially sent
Complainant a violation notice on May 4, 2010, because his dog
was over the weight limit. In response, Complainant's doctor
sent Respondent a letter dated May 7, 2010, requesting permission
to keep the dog as an emotional support animal due to
Complainant's disability. On July 13, 2010, Respondent sent
Complainant a letter asking detailed questions about the nature
of his condition, his medical treatment, and the dog's training.
Complainant responded with detailed answers to Respondent's
questions, and his doctor sent Respondent another letter which
provided even more details about Complainant's disability and
need for the requested accommodation. On August 17, 2010,
Respondent responded by sending another letter requesting
additional information regarding Complainant's disability,
medical treatment, and the dog's training. Complainant did not
provide this additional information, so Respondent sent two more
requests for additional information on October 18, 2010, and
November 3, 2010. In these further requests, Respondent asked
even more detailed questions about Complainant's treatment and
the dog's training.

However, at the time that Respondent sent their second request
for additional information on August 17, 2010, they already had
sufficient information and documentation to support a finding
that Complainant was disabled and needed the requested
accommodation to keep his dog, Kane, as an emotional support
animal. Respondent's further questions and requests for detailed
information were unreasonable and reached beyond what Respondent
needed to know in order to make a determination in the matter.

-4-

Respondent's continued refusal to grant Complainant's accommodation request after having received sufficient information and documentation to support it amounts to an unreasonable delay and effective denial of Complainant's request.

Additionally, in his complaint, Complainant alleged a violation of Section 804(b) or (f) of the Fair Housing Act, as amended, because he did not know whether or not other residents were being forced to comply with pet rules. However, Complainant did not provide any evidence that any one was treated more favorably than him, and Respondent provided copies of several other violation notices that were sent to other residents who are not disabled regarding violation of pet rules, including Raymond Sica (07/28/2009 and 08/10/2010), and Mark & Marta Kwas (08/31/2010 and 10/19/2010). Therefore, while there is cause to believe that there was a violation of Section 804(f)(3)(B) of the Fair Housing Act, there is no cause to believe that there was a violation of Section 804(b) or (f) of the Act.

Therefore, based on the foregoing, the Commission finds that there is reasonable cause to believe that a discriminatory housing practice occurred in violation of section 804(f)(3)(B) of the Fair Housing Act, as amended.

V. ADDITIONAL INFORMATION

Notwithstanding this determination by HUD, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the respondent requests that no such release be made. Such request must be made by the respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from: Florida Commission on Human Relations, 2009 Apalachee Parkway, Suite 100, Tallahassee, FL 32301.