IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AJIT BHOGAITA,

      **Plaintiff,**

v.                       <u>CASE NO.:</u>   6:11-CV-1637-ORL-31-DAB

ALTAMONTE HEIGHTS
CONDOMINIUM ASSN., INC.

      **Defendant.**

_____

<u>PLAINTIFF'S MOTION FOR ATTORNEYS' FEES</u>

COMES NOW, Plaintiff, Ajit Bhogaita ("Plaintiff" or "Bhogaita"), by and through his undersigned counsel, and pursuant to 42 U.S.C. § 3613 and Fla. Stat. § 760.35(2), hereby files his motion for attorneys' fees[1] against Defendant, Altamonte Heights Condominium Assoc., Inc. ("Defendant" or "Altamonte Heights"). In support thereof, Plaintiff states as follows:

<u>INTRODUCTION</u>

On April 16, 2013, a jury in the above-captioned case found that Defendant violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(b), and Florida Fair Housing Act, Fla. Stat. § 706.23(9)(b), by refusing to make a reasonable accommodation for Bhogaita's disability, specifically not allowing him to keep his emotional support dog, Kane, in his home. The jury awarded Bhogaita $5,000.00 in compensatory damages. <u>See</u> Doc. 131. Judgment was subsequently entered in Bhogaita's favor. <u>See</u> Doc. 134.

Beginning at the administrative stage, this case has been vigorously defended by the Defendant, resulting in voluminous discovery, motion practice, and, ultimately, a jury trial where

_____

[1] <u>See</u> Doc. 137 at 2.

Plaintiff prevailed. Accordingly, based upon the time expended on prosecuting this matter, Plaintiff seeks an award of reasonable attorneys' fees as follows:

**Law Offices of Matthew W. Dietz**:

| | | | |
|---|---|---|---|
| Matthew W. Dietz: | 221.20 hours | @ $415.00 | $91,798.00 |
| Rachel Goldstein | 33.20 hours | @ $200.00 | $6,640.00 |
| **Total Fees Demanded:** | | | **$98,438.00** |

**Bates Mokwa, PLLC**

| | | | |
|---|---|---|---|
| Aaron C. Bates: | 290.30 hours | @ $325.00 | $94,347.50 |
| **Total Fees Demanded:** | | | **$94,347.50** |

| | |
|---|---|
| **Total:** | **$192,785.50**[2] |

Plaintiff's entitlement to costs has already been decided by this Court. See Doc. 146.

### DISCUSSION

I.    Entitlement to Fees under the Fair Housing Act.

The right to attorneys' fees and costs in actions under the FHA is set forth in 42 U.S.C. § 3613, which provides that "in a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person."[3] The Supreme Court has recognized that the "main generating force" for enforcement of the FHA are private lawsuits such as this one. Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 211 (1972). Fair housing cases such as this "carry out a 'policy that Congress considered to be of the

---

[2] The detailed time records for each firm are submitted as attachments to the Declaration of Matthew W. Dietz and Aaron C. Bates, attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, and incorporated herein by reference.
[3] The Florida Fair Housing Act also provides that "[i]f the court finds that a discriminatory housing practice has occurred, *it shall issue an order prohibiting the practice and providing affirmative relief from the effects of the practice, including…reasonable attorney's fees and costs.*" Fla. Stat. § 760.35(2) (emphasis added).

highest priority.'" Id. Congress included a fee-shifting provision in the FHA in order to encourage persons injured by discrimination to seek judicial relief, and to provide fair and adequate compensation to attorneys prosecuting civil rights cases, thereby enabling victims of discrimination lacking funds to secure competent counsel. As the Supreme Court has recognized, "[t]he purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983); see also Cleveland v. Ibraham, 121 F. App'x 88, 91 (6th Cir. 2005) ("the purpose of the fee shifting provision [42 U.S.C. § 3613(c)(2)] is to make it easier for a plaintiff of limited means to bring a meritorious suit, by offering some incentive for attorneys to take such cases.").[4]

Legal services are expensive, and the civil rights laws "depend heavily on private enforcement." Hensley, 461 U.S. at 445 (quoting S. Rep. No. 94-1011, p.2 (1976)). As a result, Congress has mandated that "citizens must recover what it costs them to vindicate these rights in court." Id. Further, the Supreme Court has held that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Id. at 435.

The FHA provides for an award of fees to a prevailing party in a case brought under the FHA. Deciding whether a party has prevailed is "a clear, mechanical [determination]; when a judgment is entered in favor of a party, it is the prevailing party." Roy v. Bd. of County Comm'rs, 2011 U.S. Dist. LEXIS 119260 (N.D. Fla. 2011) (citing Allianz Versicherungs, AG v. Profreight Brokers, Inc., 99 Fed. App'x 10, 13 (5th Cir. 2004)). As the U.S. Supreme Court has noted, "[t]he touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Sole

---

[4] "The fee-shifting language in § 3613(c)(2) parallels the fee-shifting language in 42 U.S.C. § 1988(b), and these provisions have been interpreted similarly." Herrin v. Lamachys Vill. at Indigo Lakes, Inc., 2011 U.S. Dist. LEXIS 153260, *10 (M.D. Fla. 2011) (citations omitted); see also Wells v. Willow Lake Estates, Inc., 2010 U.S. Dist. LEXIS 13468, *4 (S.D. Fla. 2010) (The attorney's fees provisions of the Fair Housing Act mirror those of 42 U.S.C. § 1988).

3

v. Wyner, 551 U.S. 74, 82 (2007) (quoting Texas State Teachers Assn. v. Garland Indep. School Dist., 489 U.S. 782, 792-93 (1989)).  As judgment was entered in favor of Plaintiff, there is no question that he is the prevailing party in this matter.  See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603-604, 121 S.Ct. 1835, 149 L.Ed. 2d 855 (2001).  As such, Plaintiff is entitled to a fully compensatory award of fees and expenses. Farrar v. Hobby, 113 S.Ct. 566 (1992); Hensley, 461 U.S. 424; Norman v. Hous. Auth of the City of Montgomery, 836 F.2d 1292 (11th Cir. 1988).

Plaintiff clearly "prevailed" on the central legal questions that determined his entitlement to the relief sought in the Complaint: whether the acts of Defendant violated the FHA.  Despite Defendant's steadfast stance that no violation occurred and that it had the right to delve into Bhogaita's private and sensitive psychological circumstances, the Defendant continued to vigorously litigate this matter.  It continued its steadfast denial despite clear findings by the administrative agency, implications by this Court in the Order denying the motion to dismiss and granting Plaintiff's summary judgment, and finally the jury found the presence of discrimination by Defendant and found damages to be warranted.  Plaintiff has achieved prevailing party status because he succeeded on a "significant issue in the litigation which achieve[d] some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433.

In the case *sub judice*, the outcome achieved Plaintiff's goals.  In the face of protracted and contentious litigation, Plaintiff prevailed at trial and served the public interest in the process. Plaintiff and his counsel have vindicated his rights to non-discriminatory treatment in housing and further ensured that the 118 units of housing managed by Defendant complies with the requirements of federal civil rights laws. Moreover, the result achieved by Plaintiff has inured to the benefit of the legal community-at-large as well as the nationwide community of persons with disabilities.  Due to the publication of the decisions of this court, the decisions provided clear and

consistent guidelines for housing providers to follow when evaluating a request for an assistance animal. Plaintiff, by and through his counsel, now turn to this court for an award of fees consistent with the laudable purposes Congress attempted to achieve in mandating fees for attorneys who act as Plaintiff's counsel did here, as "private attorney[s] general." Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S. Ct. 964, 19 L. Ed. 2d 1263 (1968); Trafficante, 409 U.S. at 211.

II.    Determining an Award of Attorneys' Fees.

A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley, 461 U.S. at 429. "Where there are no special circumstances, the district court does not merely have the right to award attorney's fees, but in fact must award attorney's fees. Thus, while the district court generally has discretion in determining whether to award attorney's fees, once it is determined that no 'special circumstances' exist, this discretion is strictly cabined in civil rights cases." Cleveland, 121 F. App'x at 90 (citations omitted); see also Herrin v. Lamachys Vill. at Indigo Lakes, Inc., 2011 U.S. Dist. LEXIS 153260, *11 (M.D. Fla. 2011) (citing Milwe v. Cavuoto, 653 F.2d 80, 83 (2d Cir. 1981)) ("An award of nominal damages is not a special circumstance justifying the denial of attorneys' fees.").

Where a plaintiff has obtained excellent results, his attorney should recover full compensation. Normally, this will encompass all hours reasonably expended on the litigation and, indeed, in some cases of exceptional success, an enhanced award may be justified. In these circumstances, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is

not a sufficient reason for reducing a fee. The result is what matters." <u>Hensley</u>, 461 U.S. at 435-36.

In <u>Christianburg Garment Co. v. EEOC</u>, 434 U.S. 412, 98 S.Ct. 694 (1978), the Supreme Court reiterated that a prevailing plaintiff in a Title VII action should ordinarily be awarded attorneys' fees except where special circumstances are present. <u>Id</u>. at 417. Because the language of § 1988 does not include the "special circumstances" exception, this judicially created exception should be narrowly construed. <u>Martin v. Heckler</u>, 773 F.2d 1145, 1150 (11th Cir. 1985). A party's "good faith" or reasonable belief that its discriminatory acts were lawful are not special circumstances justifying a denial of attorney's fees. <u>City of Cleveland v. Nation of Islam</u>, 1997 U.S. App. LEXIS 22358, *5 (6th Cir. 1997). Accordingly, Plaintiff submits that no such special circumstances are present in this cause.

Furthermore, the amount of fees requested does not need to have a relation to the damages awarded, especially in this case, where the damages were not nominal. In <u>McKenzie v. Cooper, Levins & Pastko, Inc.</u>, 990 F.2d 1183 (11th Cir. 1993) (Tjoflat, J), the Eleventh Circuit found that, in a civil rights case, the amount of fees to be awarded is not constrained by the recovery:

> It is often argued that attorney fees should not be constrained by the amount of recovery. First, it is said that the damages award undervalues the individual's recovery. The rights vindicated "cannot be valued solely in monetary terms." <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 574, 106 S. Ct. 2686, 2694, 91 L. Ed. 2d 466 (1986) (Brennan, J., plurality opinion) (citing <u>Carey v. Piphus</u>, 435 U.S. 247, 266, 98 S. Ct. 1042, 1053-55, 55 L. Ed. 2d 252 (1978)); <u>Barrow v. Falck</u>, 977 F.2d 1100, 1104 (7th Cir.1992) ("Monetary awards understate the real stakes."); <u>see also</u> S.Rep. No. 94-1011, 94th Cong., 2d Sess. 6 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913 ("The amount of fees awarded [should] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature."). Second, damage awards may

> not fully reflect the public benefits of plaintiffs' verdicts in civil rights litigation. Rivera, 477 U.S. at 575, 106 S. Ct. at 2695; Barrow, 977 F.2d at 1104. Third, a strenuous defense may force the plaintiff "over budget." See id.; Lipsett v. Blanco, 975 F.2d 934, 941 (1st Cir.1992). Finally, higher fees enable litigants to attract competent counsel. Rivera, 477 U.S. at 576-77, 106 S. Ct. at 2695-96.

Id. at 1185, n.4.[5]

The starting point in determining fees to be awarded is to multiply the number of hours reasonably expended on the case by a reasonable hourly rate, to arrive at what is termed the "lodestar" amount. Norman, 836 F.2d at 1299. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services of lawyers with comparable skill, experience and reputation. Id. Proof of prevailing market rates can be demonstrated in a number of ways, "including (1) affidavits of other attorneys or experts [or] (2) citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases…" Haugh v. Sec. of the Dept. of H.H.S., 1999 WL 525539 (Fed. Cl. 1999); Design and Production, Inc. v. United States, 20 Cl.Ct. 207 (U.S.C.C. 1990).

There is a strong presumption that prevailing lawyers are entitled to their lodestar fee. See Blanchard v. Bergeron, 489 U.S. 87, 95 (1989) (noting the "strong presumption" that the lodestar amount is a reasonable fee). Moreover, courts have strictly limited the circumstances under which a lodestar award can be adjusted – upward or downward. See, e.g., Blum v. Stenson, 465 U.S. 886, 898-899, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ("Neither complexity nor novelty of the issues...is an appropriate factor in determining whether to increase the basic fee award," because they are subsumed in calculating the lodestar; quality of representation is reflected in the hourly rate); City of Riverside v. Rivera, 477 U.S. 561 (1986) (reduction of fees

---

[5] See also Sec. II.D. infra.

for proportionality to amount of damages recovered not permitted); and <u>Blanchard</u>, 489 U.S. 87 (contingent fee agreement with client does not cap fees recoverable under § 1988).[6]

While the lodestar method replaced the balancing test prescribed by <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974), the factors set forth in <u>Johnson</u> are still considered in the determination of the lodestar amount. <u>Norman</u>, 836 F.2d at 1299. Because of the lack of similar cases in an FHA context, a review of the <u>Johnson</u> factors and evidence submitted are helpful in this regard. The factors set forth by the Fifth Circuit in <u>Johnson</u> include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Johnson</u>, 488 F.2d at 717-19. The manner in which the <u>Johnson</u> factors influence an award of fees must be elucidated by the court. <u>See</u> <u>In re Celotex Corp.</u>, 227 F.3d 1336, 1341 (11th Cir. 2000).

## A. Reasonable Hourly Rate

The Court must first make a determination as to the reasonable hourly rate charged by Plaintiff's counsel. <u>Duckworth v. Whisenant</u>, 97 F.3d 1393 (11th Cir. 1996); <u>Norman</u>, 836 F.2d at 1299. In determining a reasonable hourly rate, the Court should consider the fair market value

---

[6] <u>But</u> <u>c.f.</u> <u>Guam Soc'y of Obstetricians & Gynecologists v. Ada</u>, 100 F.3d 691 (9th Cir. 1996) (The Ninth Circuit affirmed a district court's determination that a 2.0 multiplier to the lodestar figure applied because of "the extreme undesirability of the case, the likelihood that no other attorney on island would have accepted the case, and the rare and exceptional nature of the case, particularly in the small island community of Guam.").

of the services rendered by the attorney. <u>Blum v. Stenson</u>, 465 U.S. at 895-896. The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services provided by lawyers of reasonably comparable skills, experience, and reputation. <u>Norman</u>, 836 F.2d at 1299. The court may consider direct evidence of rates for similar services or opinion evidence about rates. <u>Id</u>.

The Eleventh Circuit looks to an attorney's skill as the ultimate determinate of compensation level. <u>Id</u>. at 1300. "[S]kill correlates to a knowledge of both trial practice and substantive law." <u>Hayden v. City of Orlando</u>, 2008 U.S. Dist. LEXIS 114232, *21 (M.D. Fla. 2008) (<u>citing id</u>. at 1301). "No two attorneys possess the same skill; therefore, the Court must look to the range provided by the evidence, and interpolate a reasonable market rate." <u>Id</u>. (<u>citing Norman</u>, 836 F.2d at 1300). In short, the determination of a reasonable rate is made by assessing the range of fees established in the marketplace, as modified by reference to an individual attorney's skill. <u>Id</u>. "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." <u>Am. Civil Liberties Union of Ga. v. Barnes</u>, 168 F.3d 423, 437 (11th Cir. 1999).

The fees sought by Plaintiff are based on the usual billing rates that Plaintiff's counsel apply to all clients and matters, including clients that retain counsel on an hourly basis. The usual billing rates are reasonable here given the experience of Plaintiff's counsel and the novelty of the issues raised in this case.[7] Further, Plaintiff is seeking a reasonable hourly rate that reflects the fair market value of the services rendered by each attorney.

As evidenced by the declaration of Mr. David Baade, the market rate for attorneys in this particular field is more difficult to ascertain because the relevant market is wider than just local,

---

[7] <u>See</u> Sec. II.B. *infra*.

as many communities have to look elsewhere to obtain competent counsel in this field.[8] Nevertheless, as supported by the affidavits of David Oliver, Esq. and Miles McGrane, Esq., the rates charged by Plaintiff's counsel in this matter were reasonable within the Central Florida market, especially as a result of their "nearly unmatched experience and expertise." See Affidavit of David Oliver at ¶¶ 16 and 18(a), and Affidavit of Miles McGrane at ¶¶ 12 – 15, attached hereto as **Exhibit 4** and **Exhibit 5**, respectively, and incorporated herein by reference.

Mr. Dietz has been practicing in the arena of civil rights litigation for his entire legal career. Having commenced the practice of law in September 1996, counsel's primary involvement in the federal arena has resulted in his being well versed in issues involving disability rights and other civil rights litigation. Having handled approximately 500 cases, Mr. Dietz concentrates his practice on complex disability law and fair housing issues. Mr. Dietz drafted Florida Rules of Judicial Administration 2.540 which is a mechanism to provide accommodations for participants in Florida State Courts, he was a member of the Florida Supreme Court Standing Committee on Justice and Diversity, the Florida 11th Judicial Circuit Accessibility committee, the Florida Third District Court of Appeal Accessibility Committee, and on the Accessibility Committee of the Supreme Court Committee, board member of the Florida Mentoring Partnership, past chair of the Equal Opportunity in the Law Section of the Florida Bar, past chair of the Civil Rights Section of the American Association for Justice (formerly known as the Association of Trial Lawyers of America), current president, founder, and speaker for Disability Independence Group, Inc. (whose mission is to increase participation of lawyers with disabilities in legal profession in Florida), past chair of the Public Interest Law Section and the Disability Law Committee of the Florida Bar, and the 2003-2004 winner of the Florida Bar's G. Kirk Haas Humanitarian Award the undersigned's work with children and

---

[8] See Declaration of David Baade at ¶¶ 9-12 attached hereto as **Exhibit 3** and incorporated herein by reference.

persons with disabilities.  Mr. Dietz also represents many fair housing organizations throughout the country.  Mr. Dietz is also a member of all Florida state and Federal Courts and New York and Georgia state courts. Mr. Dietz has been class counsel on seven ADA class actions, and has over one hundred reported decisions.[9]

Mr. Bates has significant experience in litigating cases in federal court.  His practice has included federal civil rights litigation with a focus on disability rights, complex commercial disputes, class action litigation in the Middle District of Florida, and multi-district litigation in the Eastern District of Pennsylvania and Southern District of Illinois. Mr. Bates has numerous reported decisions in this district and circuit.  Mr. Bates has also served as the Chair-Elect of the Equal Opportunity in the Law Section of the Florida Bar and has dedicated his career to advocating for the rights of the disabled, both in the judicial system and outside of it.[10]

The closest exemplar for fees awarded would be counsel whose practice involves civil rights actions, which demonstrate as follows:  Raetano v. Msawel, 2013 U.S. Dist. LEXIS 52284, *6 (M.D. Fla. 2013) (In an ADA action, awarding $350/hr fee for 18 year lawyer); Holland v. Gee, 2012 U.S. Dist. LEXIS 164956 (M.D. Fla. 2012) (In a Title VII action, awarding $350/hr fee for 14 year lawyer and $175/hr fee for new lawyer); Haddad v. Dudek, 2011 U.S. Dist. LEXIS 152738 (M.D. Fla. 2011) (In a complex ADA action, awarding $350/hr fee for approx. 40 year lawyer and $300/hr fee for 6 year lawyer);  Loos v. Club Paris, LLC, 731 F. Supp. 2d 1324 (M.D. Fla. 2010) (In a Title VII action, awarding $350/hr to a 15 year attorney); Cote v. Shinseki, 2010 U.S. Dist. LEXIS 50053 (M.D. Fla. 2010) (In a Title VII action, awarding $350/hr to a 21 year attorney); Easterling v. City of Orlando, 2008 U.S. Dist. LEXIS 114244 (M.D. Fla. 2008) (In a Title VII action, awarding $325/hr to a 14 year attorney, but $300/hr to a 23 year attorney); First Vagabonds Church of God v. City of Orlando, 2008 U.S. Dist. LEXIS

---

[9] See FN1, *supra.*
[10] Id.

94039 (M.D. Fla. 2008) (In a 14th Amendment action, awarding $400/hr to a 25 year attorney, $350/hr to a 16 year attorney, and $300/hr to a 20 year attorney); and Heinkel ex rel. Heinkel v. School Bd. of Lee County, Fla., 2007 WL 2757366, *11 (M.D. Fla. September 20, 2007) ("[I]t appears other courts in this judicial district have determined that the reasonable hourly rates for experienced attorneys in complex civil rights cases range between $225 and $400 per hour.").

In 2011, this court awarded $350 per hour to Mr. Dietz and $250 per hour to Mr. Bates in a successfully litigated FHA action. See Herrin, 2011 U.S. Dist. LEXIS 153260, *16-17. As demonstrated by the testimony submitted herewith, the rates charged by their respective firms are reasonable and should be awarded in this matter.


**B. Time and Labor Required/Novelty and Difficulty of Issues**

On a national basis, there are very few cases filed under the FHA and even fewer which proceed to trial. This is because of the complexity and novelty of the law in this area, and the difficulty in obtaining competent counsel. FHA in cases involving service animals or "emotional support" are extremely difficult to litigate because, until recently, there was a question as to whether such assistance animals were even covered under the FHA. In the spring of 2013, the Department of Justice and HUD finally clarified that indeed such support animals are included in the DOJ definition of "service animal" and covered under HUD guidelines and regulations regarding service animals. See FHE0-2013-01, found at http://portal.hud.gov/hudportal/documents/huddoc?id=servanimals_ntcfheo2013-01.pdf; see also **Ex. 4** at ¶12.

Cases involving support animals for persons with PTSD are even more novel and difficult. PTSD is just recently emerging as a recognized disability in the community. Individuals with PTSD "have a disproportionate resistance to voluntarily placing themselves in

12

stressful positions, which makes them less likely to be willing to 'stay the course' once the aggravation and vexation of litigation begins to be experienced." Id. at ¶13. Further, in this case, Plaintiff's PTSD was not caused by combat but instead by a same-sex sexual battery. As such, there was a substantial likelihood that a greater amount of skepticism from the fact finder would have proven to be a substantial challenge at trial. Id. Moreover, this case presented issues of first impression. See Doc. 54, 61, 62.

Throughout this case, Plaintiff was represented by well-respected members of the Florida and federal bars. Matthew Dietz is an attorney who has devoted his entire career to disability rights issues and fair housing issues, with substantial practice experience in front of the federal courts of this circuit. Aaron C. Bates has also practiced extensively in front of this Court, litigating cases under a variety of federal civil rights laws including the Rehabilitation Act, Americans with Disabilities Act, 42 U.S.C. § 1983, and the FHA.

Moreover, Plaintiff's counsel exercised "billing judgment" in this matter. Undersigned counsel meticulously reviewed the billing records and excluded that which is not properly taxed against the Defendant. Counsel also reduced that time which was deemed excessive and reduced the number of hours requested that would be unreasonable to bill its own client if this were an hourly fee arrangement.[11] Further, many discovery, trial preparation and administrative tasks were delegated to Rachel Goldstein, a relatively new attorney in Mr. Dietz's office.[12]

As a result of Defendant's defenses and insistence on having a jury resolve this matter, undersigned counsel was required to spend a substantial number of hours to successfully prosecute this matter. That counsel accepted this engagement on a contingent fee basis "is, in

---

[11] The undersigned notes that while he is an attorney based in Central Florida, travel time was billed between Jacksonville to Orlando as, during the bulk of this action, he resided in Jacksonville for treatment of illness. See also Ex. 4 at ¶18(a); Haddad v. Dudek, 2011 U.S. Dist. LEXIS 152738 (M.D. Fla. 2011) ("[T]he exclusion of out-of-town counsel's travel time is proper only if it was unreasonable not to hire qualified local counsel…Civil rights litigants may not be charged with selecting the nearest and cheapest attorney.").
[12] See FN1, *supra*.

itself, remarkable." Id. at ¶14. In light of the time spent, the novel issues involved, and the success achieved, Plaintiff submits he is entitled to 100% of the reasonable fees demanded. See, e.g., Hall v. Lowder Realty Co., 263 F. Supp. 2d 1352, 1361 (N.D. Ala. 2003).[13]

## C. Skill Necessary

This factor is addressed to the assessment of the attorneys based upon the court's observation of "the attorney's work product...his preparation, and general ability before the court." Johnson, 488 F.2d at 718. In making this assessment, this Court is to apply its expertise gained from its own career, both as lawyer and judge. Id.

The ultimate outcome evidences a higher level of skill required and knowledge of the needs of persons with disabilities, with the ability to convey this knowledge to a jury. The issues involved are novel and require a substantial amount of research and interpretation of legislation and regulation, as well as searching for analogous situations. Plaintiff believes that the briefing in this case serves to illustrate this point, as it was of very high quality and served to aid the Court in its own analysis of the issues presented. Proving claims of discrimination in the housing context is often difficult. Further claims under the disability discrimination provisions of the FHA are more difficult than the typical garden-variety of housing discrimination cases, in part because of the difficulty in expressing the rationale behind the laws prohibiting discrimination against persons with disabilities in the face of seemingly benign interest in such person's welfare. Additionally, every disability is different and, therefore, each case requires a different approach in seeking a successful resolution. Moreover, there are very few cases on point, and even fewer that ever go to the jury for its determination.

---

[13] Furthermore, all time incurred in filing, preparing, and litigating the fee application is compensable. Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990).

As such, the novel legal issues presented by this case required experience with federal civil rights laws and regulations, as well as experience with housing litigation. Plaintiff retained counsel that had these requisite skills, which is reflected in counsels' usual billing rates. Moreover, undersigned counsel brought to bear their skills, experience, reputation, and ability on these complex issues. Mr. Dietz and Mr. Bates have been litigating fair housing case for years and that experience was critical to the result obtained here. Counsel's extensive skills and experience allowed Plaintiff to more effectively prosecute his claims of discrimination to a successful result.

**D. The Amounts Involved and the Results Obtained.**

While the recovery of damages in this action is less than the fees demanded, in civil rights cases, the inquiry hinges not upon a comparison between the damages and fees. See Farrar v. Hobby, 506 U.S. 103; 121 L.Ed. 2d. 494, 113 S.Ct. 566 (1992); see also McKenzie, 990 F.2d 1183. In fact, fee awards in such cases are often disproportionate to the recovery received. See, e.g., Duckworth, 97 F.3d 1393 (Affirming order awarding fees of $162,209 on a damage award of $500 with no injunctive relief); Montanez v. Chi. Police Officers, 2013 U.S. Dist. LEXIS 37102 (N.D. Ill. Mar. 18, 2013) (Awarding attorneys' fee in amount of $109,503.86 on award of $2,000.00); Short v. Manhattan Apts., Inc., 2013 U.S. Dist. LEXIS 83347 (S.D.N.Y. June 7, 2013) (Awarding attorneys' fee in amount of $492,585, 100% of fee request, on damage award of $25,000.00); Hugee v. Kimso Apts., LLC, 852 F. Supp. 2d 281 (E.D.N.Y. 2012) (Awarding attorneys' fee in amount of $21,080.00 on award of $500.00); and Herrin v. Lamachys Vill. at Indigo Lakes, Inc., 2012 U.S. Dist. LEXIS 19307 (M.D. Fla. Feb. 16, 2012) (Awarding $177,941.00 in attorneys' fees on a damage award of $5,758.70 total for three parties).

In <u>Farrar</u>, the court found that the degree of the plaintiff's overall success goes to the reasonableness of a fee award, and that the most critical factor is the degree of success obtained. <u>Id</u>. at 114, 113 S.Ct. at 574. However, "success in a civil rights case 'cannot be valued solely in monetary terms'…When determining the degree of success obtained by a civil rights plaintiff, a court must be careful not to place 'undue emphasis on the modest money damages that were found by the jury' because successful civil rights actions vindicate a public interest." <u>Villano v. Boynton Beach</u>, 254 F.3d 1302, 1305-06 (11th Cir. 2001) (<u>quoting Riverside v. Rivera</u>, 477 U.S. 561, 574, 106 S.Ct. 2686, 2694; <u>Williams v. Thomas</u>, 692 F.2d 1032, 1038 (5th Cir. 1982)). In Justice O'Connor's concurrence in <u>Farrar</u>, she suggested three factors to consider in making the assessment: (1) the difference between the amount recovered and the relief sought; (2) "the significance of the legal issue on which the plaintiff claims to have prevailed"; and (3) whether the litigation accomplished a "public goal". <u>Farrar</u>, 506 U.S. at 121-22, 113 S.Ct. at 578-79.

1.  *The difference between the amount recovered and the relief sought.*

In or about April 2011, the initial offer to resolve this dispute was for $10,000 and for training of the condominium association. Defendant refused this offer during the administrative proceedings and demanded a determination of their rights. Even after Bhogaita prevailed, Defendant did not agree to pay Bhogaita any money or to receive training, instead maintaining their position on the legality of their acts and only allow Bhogaita to have his dog. Doc. 139-4. Only after this litigation was brought and after the Court's denial of Defendant's Motion to Dismiss (Doc. 17), was any offer forthcoming. In or about January 2012, that offer was $ 4,000, inclusive of all damages and fees, and no injunctive relief or admission of wrongdoing. Moreover, the offer of judgment issued on March 9, 2012 demonstrated that only $4,000 was

offered, inclusive of fees and costs, and no injunctive or other relief.  See Defendant's Proposal for Settlement, attached hereto as **Exhibit 6** and incorporated herein by reference.[14]

Plaintiff made continuous attempts to settle this case throughout the course of this litigation, with counsel often discounting their fees drastically as part of Plaintiff's offers, in an effort to resolve this matter and spare Plaintiff the exposure of testifying about intimate details at trial.  Such attempts were summarily dismissed.  Defendant's position was always that Plaintiff was not disabled, that it was entitled to the intrusive information it requested from Plaintiff, and that it would "win in front of a jury."  It was clear throughout this litigation, and continuing to the present, that the Defendant had no intention of ever attempting to resolve this case, notwithstanding the clear indications, through decision after decision, that their requests into Bhogaita's disability were too intrusive and violated the FHA.  Defendant's appeal further evidences its continued position of no-fault.

Additionally, in as much as this court has previously found that the Americans with Disabilities Act, or other fee shifting statutes, may be a cottage industry for plaintiffs' lawyers, this is not the same with the Fair Housing Act where the plaintiff has a very real stake in the outcome, both financially and emotionally.  Further, as with the risk associated with any civil rights case which depends on the recovery of non-economic damages, the risk associated with the amount of recovery of the plaintiff is balanced against the cost of litigation, leading to an equitable resolution for both parties.

However, the defense of these cases have become a cottage industry for **<u>defense</u>** lawyers.  In situations where defense counsel are paid by a third party, and the

---

[14] <u>Lohman v. Duryea Borough</u>, 574 F.3d 163, 167 (3d Cir. 2009) ("[F.R.E.] Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case. By its terms, Rule 408 requires exclusion of evidence of such negotiations [only] 'when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction.'").

defendant has no incentive but to stand on their ground of principle and litigate the case until its conclusion – notwithstanding the tenuousness of their arguments – it leads to a case that could have been settled for $10,000 and one class of fair housing compliance to $500,000 of fees for both sides, with a substantially similar amount paid to the plaintiff. The fault of this escalation of fees is solely on the back of a defendant who stands on their principle, which they are required to pay.

Accordingly, this award is neither nominal nor *de minimis* under <u>Farrar</u>.

### 2. *The significance of the legal issue on which the plaintiff claims to have prevailed.*

In this case, Plaintiff prevailed on proving that Defendant discriminated against him. However, success does not mean success on all grounds or counts. <u>Hall</u>, 263 F. Supp. 2d at 1361 ("The second factor suggested by Justice O'Connor does, however, indicate that Hall's level of success, while partial, was still greatly significant. As noted above, Justice O'Connor suggests that the court consider the significance of the legal issue upon which the plaintiff prevailed. This consideration aids assessment of a plaintiff's success where the plaintiff has lost some claims but won others."). Further, this verdict demonstrates that housing providers should not disregard the rights of persons with disabilities and allege to act for that person's own good. As in <u>Hall</u>, where the Court has found a violation of civil rights, even a partial success on the pled claims is significant. <u>Hall</u>, 263 F.Supp 2d. at 1361-62.

### 3. *Whether the litigation accomplished a "public goal."*

The instant case clearly achieved a public goal. In particular, the litigation ensured that a housing provider cannot recklessly disregard the rights of a veteran disabled by virtue of PTSD and furthered the goals of the FHA by confirming his entitlement to a support animal. As stated

by the Court in <u>Hall</u>, "not only did Hall vindicate one of her own civil rights, her suit vindicated the public's interest in ridding the vestiges of racial segregation from all aspects of our society, including housing." <u>Id</u>. at 1362.

### 4. *Successful and unsuccessful claims.*

A court may reduce compensable hours for time spent on unsuccessful and unrelated claims. Plaintiff prevailed on all of his claims and the jury found that Defendant discriminated against Plaintiff, awarding damages in the process. Accordingly, there should be no reduction of time requested.

### E. Undesirability.

This case was not desirable for the average firm. <u>See</u> **Ex. 4**. The case presented difficult and time consuming issues, which would not only require substantial commitment of attorney time and firm resources, but would also result in delayed compensation, if any. Further, the difficulty in ascertaining damages would also make this case undesirable for a profit-seeking firm. Most disability discrimination lawyers handle cases involving injunctive relief concerning the strict construction requirements of physical accessibility. As such, they are guaranteed fee recovery if there is any violation. In this circumstance, not only are FHA violations difficult to establish, but undersigned counsel was required to present non-economic damages to a population that has a limited understanding of MST and PTSD. Plaintiff would have difficulty obtaining representation for such litigation because of the general unavailability of counsel that is experienced with the FHA. Undersigned counsel took this case based on their desire to assist Bhogaita in being treated as similarly situated human beings, which would not otherwise have been addressed.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter an Order granting Plaintiff's Motion for Attorneys' Fees, awarding Plaintiff his reasonable attorneys' fees, pursuant to 42 U.S.C. § 3613, in the total amount of $192,785.50 incurred in prosecuting this action; and awarding such further relief as deemed just and proper.

### LOCAL RULE 3.01(G) CERTIFICATION

Undersigned counsel has conferred with counsel for Defendant and he opposes the relief sought herein.

Respectfully submitted this 8th day of July, 2013.

s/Aaron C. Bates_____
Aaron C. Bates
Florida Bar No. 011749
THE MAHER LAW FIRM, P.A.
631 W. Morse Blvd., Ste. 200
Winter Park, Florida 32789
Telephone: (407) 839-0866
Facsimile: (407) 425-7958
acbates@maherlawfirm.com
*Counsel for Plaintiff*

Matthew W. Dietz
Florida Bar No. 0084905
LAW OFFICES OF MATTHEW W. DIETZ, P.L.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone (305) 669-2822
Facsimile (305) 442-4181
Matthewdietz@usdisabilitylaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 8, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties named on the attached Service List or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

s/Aaron C. Bates_____
Aaron C. Bates

**SERVICE LIST**

Greg Ackerman
Florida Bar No. 0104132
Robert Alden Swift
Florida Bar No. 0018518
COLE, SCOTT & KISSANE, P.A.
Tower Place, Suite 750
1900 Summit Tower Blvd
Orlando, Florida 32 810
E-Mail: greg.ackerman@csklegal.com
Telephone: (321) 972-0012
Facsimile: (321) 972-0099

**Attorneys for Defendants**